IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO DIAZ,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>MATTHEW CATE, et al.,<br><br>　　　　Defendants. | No. C 11-3459 CRB (PR)<br><br>ORDER GRANTING<br>MOTION FOR SUMMARY<br>JUDGMENT<br><br>(Docket Nos. 28, 47) |

　　　Plaintiff, a California state prisoner currently incarcerated at Pelican Bay State Prison ("PBSP"), filed the instant action for damages and injunctive relief under 42 U.S.C. § 1983 alleging that in 2010, defendants implemented and enforced a Contraband Surveillance Watch policy that violated his Eighth Amendment right against cruel and unusual punishment. Plaintiff also alleged that in 2010, he was temporarily housed in an unsanitary room with a "zz" bed.

　　　Per order filed on June 5, 2012, the court found that, when liberally construed, plaintiff's allegations against Secretary Matthew Cate, Director of Corrections Debbie Rives, Director of Parole Operations Robert Ambroserlli, Warden G. D. Lewis, Chief Deputy D. W. Bradbury, Associate Warden McGuyer, Correctional Captain J. A. Rollins, and T. A. Wood stated an arguably cognizable claim under § 1983 for cruel and unusual punishment, and ordered the

United States Marshal to serve those defendants. The court dismissed plaintiff's allegations regarding the Fourth and Fourteenth Amendments, and against named Del Norte County and Crescent City officials under the authority of 28 U.S.C. § 1915A(b).

The remaining defendants move for summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law. They also claim that they are entitled to qualified immunity. Plaintiff has filed an opposition,[1] and defendants have filed a reply.

## BACKGROUND

A. <u>Contraband Surveillance Watch</u>

The CDCR Department Operations Manual ("DOM") and PBSP Operations Manual Supplement authorize correctional staff to place an inmate on contraband surveillance watch ("CSW") when: (1) it becomes apparent through medical examination, direct observation, or reasonable suspicion that an inmate has ingested or otherwise concealed contraband in his body, and the inmate cannot or will not voluntarily remove and surrender the contraband, or (2) when a physician has determined that the physical removal of contraband may be hazardous to the health and safety of the inmate. (Graves Decl. ¶ 2, Ex. A at OAG_00004.) The inmate is placed in an approved, controlled, and isolated setting under constant visual supervision and observation until the contraband can be retrieved through natural means, or is voluntarily surrendered by the inmate. (Graves Decl. ¶ 3, Ex. A at OAG_00004.) Contraband can include such items that are deemed a threat to an institutions' operations, safety and security, such as weapons, drugs, drug paraphernalia, and written notes or "kites." (Graves Decl. ¶

---

[1] In plaintiff's opposition, he concedes that Correctional Captain Rollins, Director of Parole Operations Robert Ambroselli, and Director of Corrections Debbie Rives are not liable. Thus, these defendants are hereby DISMISSED.

2

4, Ex. B at OAG_00006.) Inmates are prohibited from possessing contraband in an effort to prevent crimes, such as serious assaults or death. (Graves Decl., Ex. B at OAG_00006.) Any inmate who is harboring contraband internally represents an immediate threat to the safety of himself, others, and the security of the institution. (Graves Decl. ¶ 4.)

If an inmate is suspected of harboring contraband internally, he is placed on contraband watch. (Graves Decl, Ex. A at OAG_00004, Ex. B at OAG_00006.) Contraband watch operations are governed by the policies and procedures contained in CDCR's DOM § 52050, et. seq. (*Id.*, Ex. A.) Contraband watch operations at PBSP are conducted in accordance with Operations Manual Supplement § 52050.23, dated January 4, 2010. (*Id.*, Ex. B.)

Before an inmate is placed on CSW, staff conducts several actions, including medically assessing the inmate, searching the inmate, ensuring that the cell is sanitized and free of contraband, and clothing the inmate in pants, socks, and a t-shirt. (Graves Decl. ¶ 9, Ex. A at OAG-00004, Ex. B at OAG_00009.) If the temperature in the cell is below 65 degrees Farenheit, the inmate is provided a blanket. (Graves Decl., Ex. A at OAG_00004, Ex. B at OAG_00009.) Over the duration of the CSW, the inmate remains under constant visual observation. (Graves Decl. ¶ 9, Ex. B at OAG_00009.) During the CSW, medical personnel assess the inmate daily, and the staff documents the result. (Graves Decl. ¶ 9, Ex. B at OAG_00009.)

When in CSW, the inmate is secured in leg and waist restraints and a tube device. (Graves Decl. ¶ 10, Ex. A at OAG_00004, Ex. B at OAG_00009.) The tube device is a hard plastic tube attached to the inmate's hands to cover them, and is only removed in staff's presence. (*Id.* ¶ 11, Ex. B at OAG_00009.) The inmate remains in restraints for the duration of the time in CSW, and the tube

3

1   device is removed during meals and bowel movements. (*Id.* ¶ 12, Ex. B at
2   OAG_00010.) Statistics showed that the use of the tube devices and other hand
3   coverings has greatly increased the contraband-interception success rate. (*Id.* ¶¶
4   10-11; McGuyer Decl. ¶¶ 4-7.)
5       Inmates may be removed from CSW when it is reasonably believed that
6   the inmate is contraband free. (Graves Decl. ¶ 7, Ex. A at OAG_00005.) At
7   PBSP, inmates are held in CSW for a period of 72-hours, or when the inmate has
8   completed at least three bowel movements free from contraband. (Graves Decl. ¶
9   7, Ex. B at OAG_00006, OAG_00011.) If the need arises to continue a CSW for
10  more than 72-hours, the Chief Deputy Warden must approve the extension. (*Id.*,
11  Ex. B at OAG_00006.) When an inmate indicates that he needs to defecate or
12  urinate, prison staff provides him with a portable toilet and two buckets lined
13  with plastic bags. (Graves Decl. ¶ 13, Ex. A at OAG_00005, Ex. B at
14  OAG_00010 - OAG-00011.) The inmate defecates into the portable toilet and
15  buckets, and the waste is removed and examined for contraband. (*Id.*) At the end
16  of the CSW, the inmate is given a final medical evaluation prior to being released
17  from CSW. (Graves Decl. ¶ 14.)
18  B.    Plaintiff's Placements
19      On February 12, 2010 around 10:00 a.m., Acting Lieutenant E. Enose
20  requested that plaintiff be placed on CSW because plaintiff was observed
21  swallowing suspected contraband just prior to an unclothed body search. (Graves
22  Decl. ¶ 17, Ex. D at OAG_00012, OAG_00015, OAG_00023.) The request was
23  approved by Facility B Acting Captain D. Melton. (Graves Decl. ¶ 17, Ex. D at
24  OAG_00012.) Prior to placing plaintiff in CSW, plaintiff was examined by
25  medical staff, and the CSW cell was inspected by prison staff and found to be in
26  good condition. (Graves Decl. ¶ 18, Ex. D at OAG_00014 - OAG_00015.) On
27
28      4

1  February 14, 2010, plaintiff gave his first bowel movement and produced an
2  inmate-made note with writing on it.  (*Id.*, OAG_00016.)  Plaintiff's CSW
3  detention was then approved for a 72-hour extension, however, because plaintiff
4  produced three adequate bowel movements, he was released on February 15,
5  2010 at 1:30 p.m.  (Graves Decl. ¶¶ 19-20, Ex. D at OAG_00080, OAG_00081.)
6  The record shows that during plaintiff's CSW period, plaintiff was examined six
7  times by medical staff who noted no health issues, plaintiff was evaluated by a
8  mental health professional once, the cell maintained an average temperature of 72
9  degrees Fahrenheit, plaintiff was given a mattress every night before 10:00 p.m.
10 until breakfast time the following morning, plaintiff's tube devices were regularly
11 sterilized, and plaintiff ate and drank normally and was cooperative with staff.
12 (Graves Decl. ¶ 21.)  Moreover, at the beginning and end of every shift, plaintiff's
13 restraints and clothing were inspected to ensure that proper procedures were
14 being followed.  (*Id.* ¶ 22.)

15       On August 16, 2010 around 10:00 a.m., Acting Lieutenant D. Stiles
16 requested placing plaintiff on CSW because plaintiff failed to pass a metal
17 detector text.  (Graves Decl. ¶ 24, Ex. E at OAG_00036 - OAG_00037.)  The
18 request was approved by Facility B Acting Captain S. Manion.  (*Id.*)  Prior to
19 plaintiff's arrival at CSW, plaintiff was medically cleared for placement, and
20 plaintiff's CSW cell was found to be in good condition.  (Graves Decl. ¶ 25, Ex.
21 E at OAG_00038, OAG_00040.)  On August 17, 2010, plaintiff produced his
22 first bowel movement which revealed one inmate-manufactured weapon.
23 (Graves Decl. ¶ 26, Ex. E at OAG_00041, OAG_00052.)  On August 20, 2010,
24 plaintiff's detention in CSW was approved for a 72-hour extension because
25 plaintiff had not yet given three adequate bowel movements.  (*Id.*, Ex. E at
26 OAG_00083.)  Because of the lack of movement, exercise, and sleep, plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

alleges that he had a difficult time producing a bowel movement. (Compl. at 5.) He also claims that he became dehydrated and constipated. (*Id.*) On August 20, 2010, plaintiff complained of stomach pain, and, after being evaluated by a nurse, was given a laxative. (Graves Decl. ¶ 27.) Although plaintiff defecated six times while on CSW, the first contained contraband, and two others were not an adequate amount. (Graves Decl. ¶ 26, Ex. E at OAG_00041.) On August 22, 2010, plaintiff produced his third adequate bowel movement free of contraband and was ordered removed from CSW. (Graves Decl. ¶ 26.) The record shows that during this CSW period, plaintiff was examined eight times by medical staff who noted no health issues, plaintiff was evaluated by a mental health professional once, the cell maintained an average temperature of 72-73 degrees Fahrenheit, and plaintiff was given a mattress every night before 10:00 p.m. until breakfast time the following morning. (Graves Decl. ¶ 27.) Moreover, at the beginning and end of every shift, plaintiff's restraints and clothing were inspected to ensure that proper procedures were being followed. (*Id.* ¶ 28.)

16
17
18
19
20
21
22

Plaintiff alleges that during his CSW detentions, his cell was not sanitary and he was not allowed to wear shoes which could have subjected him to a foot fungus infection. (Compl. at 5.) Plaintiff also was not permitted to take a shower, could not wash up, was not allowed any hygiene, and was forced to eat and sleep on the floor without a blanket. (*Id.*) Plaintiff claims that wearing the tube devices restricted the blood flow in his hands and that because of the discomfort, plaintiff tried to sleep but woke up every thirty minutes. (*Id.*)

23
24
25
26

From August 22, 2010 through August 30, 2010, plaintiff had to sleep on the floor in a a "zz" room. (*Id.* at 6.) In that room, the mat plaintiff had to use was not sanitized after every use and there were dust bunnies that got on plaintiff's face. (*Id.*)

27
28

**DISCUSSION**

A. <u>Standard of Review</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. <u>Id.</u>

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Cattrett</u>, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u>

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. <u>Anderson</u>, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."

Celotex, 477 U.S. at 323.

B.     Legal Claim & Analysis

Defendants argue that they are entitled to summary judgment and qualified immunity from plaintiff's Eighth Amendment claim regarding the CSW. Defendants further claim that none of the named defendants personally participated or directed the administration of the CSW.[2] Plaintiff argues that there are material disputes of fact that prevent summary judgment from being granted. Specifically, plaintiff alleges that the CSW mattress was never sanitized (Opp. at 1), the tube devices did not allow for good circulation (Opp. at 1-2), and plaintiff did not always have an opportunity to wipe his hands with sanitary wipes (Opp. at 2).

The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 31 (1993). The Amendment also imposes duties on these officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, id. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, Farmer, 511 U.S. at 834 (citing Wilson, 501 U.S. at 297).

---

[2] Plaintiff has a filed a motion to reconsider the court's denial of plaintiff's sixth request for an extension of time so that plaintiff can conduct "necessary" discovery. (Docket No. 47.) Specifically, plaintiff states that he needs to discover evidence to show that defendant Cate was personally involved in plaintiff's allegation. For the purpose of defendants' motion for summary judgment, the court will assume that defendant Cate was personally involved in plaintiff's claim, and plaintiff's motion for reconsideration is DENIED.

The requisite state of mind to establish an Eighth Amendment violation depends on the nature of the claim. In prison-conditions cases, the necessary state of mind is one of "deliberate indifference." See, e.g., Farmer, 511 U.S. at 834 (inmate safety); Wilson, 501 U.S. at 302-03 (general conditions of confinement); Estelle v. Gamble, 429 U.S. 97, 104 (1976) (inmate health).

Defendants argue that they are entitled to summary judgment on plaintiff's Eighth Amendment claim against them because plaintiff has not set forth sufficient evidence showing that there is a genuine issue for trial.

Viewing the evidence in the light most favorable to plaintiff, and even assuming that the defendants personally participated or directed the alleged violations, the conditions plaintiff experienced on CSW were not sufficiently serious to violate the Eighth Amendment. In determining whether a deprivation of a basic necessity is sufficiently serious to violate the Eighth Amendment, a court must consider "the circumstances, nature, and duration of the deprivation." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). During both of plaintiff's placements on CSW, plaintiff was provided all of the basic necessities of life, including shelter, food, drinking water, clothing, personal safety and medical attention. Plaintiff's complaints, without more, falls short of the "extreme deprivation" required to support a constitutional violation. See, e.g., Schroeder v. Kaplan, 60 F.3d 834 (9th Cir. 1995) (citing cases where failure to provide a mattress violated the Eighth Amendment only when accompanied by other factors, such as inadequate clothing, extreme cold, improper diet, denied right to use toilet, had to lie in own excrement).

Here, plaintiff received adequate food, clothing, shelter, and medical care while in CSW. While placement in the CSW was difficult and at times uncomfortable, as plaintiff asserts, it lasted a relatively limited period of time.

The limited deprivation of a mattress, blanket, and shower, in addition to limited exercise and interrupted and uncomfortable sleep, under the circumstances of this case is insufficient to state an objective and sufficiently serious deprivation to implicate the Eighth Amendment. See, e.g., Centano v. Wilson, No. 11-15738, 479 Fed. Appx. 101 (9th Cir. 2012) (unpublished memorandum disposition) (affirming conclusion that seven days in CSW where inmate was forced to sleep on a cold floor without a mattress or blanket, was unable to shower, and had difficulty sleeping did not rise to the level of a constitutional violation); Gilblom v. Gillipsie, 435 Fed. Appx. 165, at *166-67, *169 (3d Cir. 2011) (unpublished memorandum disposition) (finding inmate failed to meet the objective component of the Eighth Amendment when he alleged that, in 2007, he was in a "dry cell" for 36 hours where he was forced to remain in close proximity with his own feces and then searched his feces with his own hands after officers declined checking it for contraband); Anderson v. County of Kern, 45 F.3d 1310, 1314-15 (9th Cir.), amended, 75 F.3d 448 (1995) (temporary placement in safety cell that was dirty and smelled bad did not constitute infliction of pain); Harris v. Fleming, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (five days in a "filthy, roach-infested cell" did not violate the Eighth Amendment); Holloway v. Gunnell, 685 F.2d 150 (5th Cir. 1985) (no claim stated where prisoner forced to spend two days in hot dirty cell with no water); Uvalles v. Jacquez, No. 09-5221 RMW, 2013 WL 1283390, at *6 (N.D. Cal. 2013) (granting summary judgment because conditions in CSW not sufficiently serious to violate Eighth Amendment); Wiley v. Kentucky Dept. of Corr., 2012 WL 5878678, at *5-6 (E.D. Ky. 2012) (dismissing inmate's allegation that 2-week stay in a "dry cell" in September 2010 with no running water, no clean clothes or linens, and no flushable toilet for failure to state an Eighth Amendment claim upon which relief could be granted); Evans v. Fogg, 466 F.

Supp. 949 (S.D.N.Y. 1979) (no claim stated by prisoner confined for 24 hours in refuse strewn cell and for two days in flooded cell).  Cf. Hearns v. Terhune, 413 F.3d 1036, 1041-42 (9th Cir. 2005) (allegations of serious health hazards in disciplinary segregation yard for a period of nine months, including toilets that did not work, sinks that were rusted and stagnant pools of water infested with insects, and a lack of cold water even though the temperature in the prison yard exceeded 100 degrees, enough to state a claim of unconstitutional prison conditions).

Finally, plaintiff's allegation that his placement in the "zz" room for one week where he had to sleep on an unsanitized mat and where there were dust bunnies that flew in his face does not violate the Eighth Amendment.  Hernandez v. Denton, 861 F.2d 1421, 1424 (9th Cir. 1988) (allegation that inmate slept without a mattress for one night insufficient to state a claim under Eighth Amendment and no amendment can remedy the insufficiency), vacated on other grounds sub nom Denton v. Hernandez, 504 U.S. 25 (1992); Guillory v. Tilton, 2011 WL 400847, at * 6 (E.D. Cal. 2011) (failing to provide prisoner a mattress for three nights does not violate Eighth Amendment); Muniz v. Hill, 2008 WL 1995457 (D. Or. 2008) (no mattress for thirty days, with instead prisoner being compelled to sleep on a rubber security mat on a dirty floor, did not implicate Eighth Amendment); Desroche v. Strain, 507 F. Supp. 2d 571 (E.D. La. 2007) (recommending pretrial detainee's allegation that he was compelled to sleep on concrete floor of unsanitary holding tank without a mattress for ten days be dismissed as legally frivolous and for failure to state a claim); Brown v. Hamblin, 2003 WL 23274543, at *2 (W.D. Wis. 2003) (jail inmate's claim regarding being forced to sleep on a mattress on a dirty jail floor for 28 days and later for an additional 8 days dismissed as legally frivolous); see also Holloway v. Gunnell,

685 F.2d 150 (5th Cir. 1985) (no claim stated where prisoner was forced to spend two days in hot, dirty cell with no water); Wilson v. Schomig, 863 F.Supp. 789, 794-95 (N.D. Ill. 1994) (without physical harm shown, fact that inmate slept on urine and feces-stained mattress in dirty, roach-infested, leaky cell did not frame an Eighth Amendment claim).

Accordingly, defendants are entitled to summary judgment.

Alternatively, defendants are entitled to qualified immunity with respect to plaintiff's CSW claim. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. See Pearson v. Callahan, 129 S. Ct. 808, 818 (2009). The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992). If the law is determined to be clearly established, the next question is whether, under that law, a reasonable official could have believed his conduct was lawful. Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993).

The court may grant qualified immunity by viewing all of the facts most favorably to plaintiff and then finding that under those facts the defendants could reasonably believe they were not violating the law. See, e.g., Marquez v. Gutierrez, 322 F.3d 689, 692-93 (9th Cir. 2003). Whether a reasonable official could have believed the action taken was lawful is a mixed question of law and

fact: "It involves an objective test of whether a reasonable official could have believed that his conduct was lawful in light of what he knew and the action he took." Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095, 1099 (9th Cir. 1995).

The Ninth Circuit has found that defendants were entitled to qualified immunity on an Eighth Amendment claim brought by an inmate who was placed on CSW for seven days. Chappell v. Mandeville, 706 F.3d 1052 (9th Cir. 2013). In Chappell, the inmate was subject to a temporary confinement of six days, where he was closely monitored and his bowel movements searched to determine whether he had ingested contraband. Id. at 1055. He was permitted two pairs of underwear, taped at the waist and thighs, placed in two jumpsuits taped at the thighs, ankles, waist, and upper arms so as to close off any openings in his clothing. Id. The inmate was also placed in waist chain restraints, ankle shackles, and chained to the bed. Id. at 1055-56. The lights were kept on the cell to allow for surveillance, and the cell had no furniture other than a bed without a mattress. Id. at 1055. When the inmate needed to defecate, he notified prison staff, who brought him a plastic, moveable chair. Id. The Ninth Circuit noted that, by April and May 2002, there were no cases in this jurisdiction or others that involved a contraband watch similar to the one described. Id. at 1061. This court has also not discovered any CSW cases that would have provided further clarity to a reasonable officer in 2010 – the time plaintiff was placed in CSW.

Here, the focus of the court's inquiry is whether defendants had fair notice that their actions were unconstitutional. Defendants provided evidence that the conditions in the CSW were necessary for the penological purpose of prison security and safety. Namely, they had a reasonable suspicion that plaintiff was harboring contraband in his rectum. Given this important penological purpose

and the state of the law at the time, the conditions surrounding that contraband watch were not "such a far cry from what any reasonable prison official could have believed was legal that the defendants knew or should have known they were breaking the law." Chappell, 706 F.3d at 1062. Defendants are thus entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.

The clerk shall enter judgment in favor of defendants and close the file.

SO ORDERED.

DATED:  Aug. 16, 2013

CHARLES R. BREYER
United States District Judge

Z:\PRO-SE\CRB\CR.11\Diaz, S.11-3459.msj.wpd